# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE J. SHAW,<br><br>                    Plaintiff,<br><br>v.<br><br>PAUL S. KEMPER, KEVIN CARR,<br>JOSEPH MCLEAN, KIM M.<br>CHAFFIN, JERILYN TAYLOR,<br>TRAVIS BRADY, MICHELLE BONES,<br>LON BECHER, E. DAVIDSON,<br>CINDY O'DONNELL, KRISTEN<br>VASQUEZ, and LAURA FRAZIER,<br><br>                    Defendants. | Case No. 20-CV-599-JPS<br><br><br><br>**ORDER** |

Plaintiff Terrance J. Shaw, an inmate confined at Racine Correctional Institution ("RCI"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") were violated.[1] Plaintiff has paid the full filing fee. This Order screens Plaintiff's complaint and resolves his pending motions.

## 1.      FEDERAL SCREENING STANDARD

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are

---

[1]Although Plaintiff also referenced elder abuse laws in his complaint, he did not allege a cause of action for elder abuse or any facts that would support such a claim.

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

On August 3, 2017, Dr. Myron Mikaelian noted that Plaintiff had "a very significant degree of degenerative arthritis involving the left hip." (Docket #1 at 2). On December 28, 2018, RCI Heath Services Unit ("HSU") Physical Therapist Edward Neiser ("Neiser") performed CranioSacral Therapy ("CST") on Plaintiff. (*Id.* at 3). Neiser focused on Plaintiff's increased pain in his left hip and noted that Plaintiff made outstanding progress regarding his right total hip arthroplasty ("THA"). But Plaintiff's main issue was increased pain in his rehabilitation for the right THA, leading Neiser to believe Plaintiff would benefit from also having a THA on the left hip. (*Id.*) On January 9, 2019, Aurora Health Care staff found that Plaintiff had "severe left hip osteoarthritic degeneration change with complete loss of joint space and remodeling of both the femoral head and acetabulum associated with subcortical sclerosis as well as cyst formation and osteophyte formation." (*Id.*) Additionally, Dr. William Lutes noted that Plaintiff was doing pretty well after his right THA. (*Id.*)

Plaintiff filled out a Heath Service form regarding his right and left hip pain on January 15, 2019. (*Id.*) Defendants Kim Chaffin ("Chaffin") and Jerilyn Taylor ("Taylor") are nurses at RCI, and Defendant Dr. Joseph McLean ("Dr. McLean") is a doctor at RCI. (*Id.* at 1). On January 17, 2019, Chaffin noted, "Dr. McLean was consulted on 1-16-19 regarding the patient's request to get his left hip replaced. Also consulted with Ed PT at the same time to acquire progress status on his therapy POC. Both PT and MD agree that patient must show evidence of rehabilitating his right hip before the left hip will be replaced. 'At this time he is not.'" (*Id.* at 3). That same day, Taylor noted that, "in order to schedule other hip surgery, Patient needs to show progression with right hip." (*Id.*)

On January 17, 2019, Plaintiff filed an Inmate Complaint ("IC")[2] alleging that Dr. McLean was violating the ADA, the RA, and the Eighth Amendment by denying him medical care given that Plaintiff had experienced extreme left hip pain since 2017. (*Id.* at 4). On January 29, 2019, Dr. McLean issued a progress note as to Plaintiff's concerns of wanting to see an orthopedic surgeon regarding his left hip, indicating that Plaintiff could barely ambulate holding onto things because of his left hip and right knee. (*Id.*) On January 30, 2019, Plaintiff wrote to Defendants Warden Paul Kemper ("Kemper"), Health Services Unit Manager Kristen Vasquez ("Vasquez"), and Assistant Health Services Unit Manager Laura Frazier ("Frazier") regarding "HSU staff putting false/lying statements in writing" in Plaintiff's HSU documents. In his letter, Plaintiff gave "'Fair Warning' to Nurses and Supervisors that False Documents will be prosecuted in outside Court." (*Id.* at 5). On February 1, 2019, Defendant Michelle Bones ("Bones"), the Institution Complaint Examiner, issued a letter returning Plaintiff's IC

---

[2]The Wisconsin Department of Corrections ("DOC") maintains an inmate complaint review system to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10). If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the Reviewing Authority. *Id.* § DOC 310.10(9),(12). The Reviewing Authority will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2). If the ICE recommends, and the Reviewing Authority accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13.

because there was no indication that Plaintiff had contacted the HSU managers regarding the issue, which Plaintiff was required to do. Further, Bones noted that she had consulted with the HSU, and Plaintiff was scheduled for a follow-up appointment to discuss his plan of care. (*Id.*)

On February 7, 2019, Plaintiff filed another IC, emphasizing "there are written/documented Lies from the Defendant staff" and "the further delay where these officials Refuse and Fail to take action i[s] unnecessarily prolonging [Plaintiff's] pain and suffering." (*Id.* at 5). Additionally, Plaintiff was upset because Bones talked to the HSU without accepting the IC. Plaintiff claims that he "could not sleep and was powerless causing extreme emotional distress and heart pain" because of Bones's actions. (*Id.*) "Their shenanigans caused the HSU staff to impeach themselves by doing a complete 180° reversal. As a result the Defendants are caught/busted and need to be held accountable for their illegal behavior. Their actions/behavior unnecessarily prolonged [Plaintiff's] pain and suffering." (*Id.*)

Bones acknowledged Plaintiff's second IC as RCI-2019-3454 on February 19, 2019, and Plaintiff's first IC as RCI-2019-3920 on February 26, 2019. (*Id.* at 6). She dismissed Plaintiff's first IC on March 12, 2019. Bones found that "[u]nder these circumstances, the ICE has no reason to believe the care and treatment offered is not adequate or not correct, or that a delay in scheduling or treatment has occurred," noting that "RCI HSU is the [Plaintiff's] primary care provider, and it is the medical provider's determination to make decisions regarding what course of treatment." (*Id.*) On April 3, 2019, Defendant Lon Becher ("Becher"), the Reviewing Authority, agreed with the ICE's recommendation and dismissed RCI-2019-3920. (*Id.* at 7). On April 4, 2019, Plaintiff appealed to the Corrections

Complaint Examiner, who received it on April 12, 2019. (*Id.*) Defendant Emily Davidson ("Davidson") at the CCE dismissed the appeal because Plaintiff's "medical complaint exceeded 500 words." (*Id.*) On May 3, 2019, Defendant Cindy O'Donnell ("O'Donnell"), of the Office of the Secretary, dismissed RCI-2019-3920 on the recommendation of the CCE. (*Id.* at 8).

On March 7, 2019, Bones dismissed Plaintiff's second IC. On March 22, 2019, Becher dismissed it as well, characterizing it as "patient disagrees with documentation in their health record." (*Id.* at 6–7). Plaintiff appealed RCI-2019-3454 to the CCE on March 30, 2019, focusing on Bones's communication with the HSU before issuing a tracking number. (*Id.* at 7). On April 3, 2019, the CCE acknowledged the appeal, and Davidson dismissed it. (*Id.*) On April 29, 2019, O'Donnell dismissed RCI-2019-3454. (*Id.* at 8).

3.  **ANALYSIS**

    3.1  **Personal Involvement of Certain Defendants**

    Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under Section 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* As explained below, most of the Defendants do not have any personal liability related to Plaintiff's claims.

    Plaintiff will not be allowed to proceed against Defendants Kevin Carr and Travis Brady because the complaint contains no allegations about them. Additionally, Plaintiff offers no factual allegations regarding

Vasquez and Frazier's involvement in his medical care. Individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 823, 833 (7th Cir. 2010)).

Next, Plaintiff may not proceed on Section 1983 claims against Bones, Becher, Davidson, and O'Donnell (collectively, the "Administrative Defendants"), whose only involvement was in the administrative inmate complaint process. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). If a non-medical prison official does not ignore the inmate but instead investigates the inmate's complaint and refers them to the appropriate medical staff, his duty is at an end. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Bones investigated the matters and deferred to the medical staff's opinions on what was the best course of treatment for Plaintiff. The other Administrative Defendants relied upon Bones's investigation and recommendation when making their decisions. Thus, none of the Administrative Defendants ignored Plaintiff, and instead investigated his claims and acted accordingly. Plaintiff's mere disagreement with their decisions does not a constitutional violation make.

Lastly, Kemper cannot be held liable for the actions of other prison officials simply because he is the warden. Rather, he is responsible only for his own conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (noting that, to be liable, a supervisory defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Plaintiff has not alleged any facts that would attach personal liability to Kemper.

### 3.2 Eighth Amendment

Plaintiff's allegations invoke his rights under the Eighth Amendment, which secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quotation omitted). To sustain such a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) that this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The deliberate indifference inquiry has two components: "[t]he official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Deliberate indifference equates to intentional or reckless conduct, not mere negligence. *Berry*, 604 F.3d at 440. "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference." *Id.* at 441. Further, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (quotation omitted). Rather, a medical professional is deliberately indifferent only when his decisions are "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895 (quotation omitted). Lastly, to show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay

exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

In his complaint, Plaintiff provided facts that show that Defendants were not deliberately indifferent to his serious medical needs. *Am. Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 724 (7th Cir. 1986) ("A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded."); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (holding that plaintiff "has simply pled himself out of court by saying too much"); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (noting that a plaintiff may "plead himself out of court" by alleging facts establishing that a defendant is entitled to prevail on a motion to dismiss); *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) (explaining that "a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse."); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir.1992) ("We are not required to ignore facts alleged in the complaint that undermine plaintiff's claim.").

Specifically, Plaintiff alleges that he filled out a Heath Service form regarding his right and left hip pain on January 15, 2019. (Docket #1 at 3). On January 17, 2019, Chaffin noted, "Dr. McLean was consulted on 1-16-19 regarding the patient's request to get his left hip replaced. Also consulted with Ed PT at the same time to acquire progress status on his therapy POC. Both PT and MD agree that patient must show evidence of rehabilitating his right hip before the left hip will be replaced. 'At this time he is not.'"

(*Id.*) The same day, Taylor noted that "in order to schedule other hip surgery, Patient needs to show progression with right hip." (*Id.*) On March 12, 2019, in response to Plaintiff's IC, Bones found that "[u]nder these circumstances, the ICE has no reason to believe the care and treatment offered is not adequate or not correct, or that a delay in scheduling or treatment has occurred," noting that "RCI HSU is the [Plaintiff's] primary care provider, and it is the medical provider's determination to make decisions regarding what course of treatment." (*Id.* at 6).

Plaintiff does not allege facts against McLean, Chaffin, and Taylor, apart from their denial of his requests for different or additional treatment (i.e., a total left hip replacement). Plaintiff does not have a constitutional right to receive the treatment of his choosing. *See Forbes v. Edgar*, 112 F.3d 262, 266–67 (7th Cir. 1997). Plaintiff suggests that McLean, Chaffin, and Taylor were aware of his medical condition and refused to secure him surgery, but, again, he has not alleged facts indicating that this was anything more than his want. *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("[T]he Constitution does not mandate that a prisoner receive exactly the medical treatment he desires.")

Plaintiff has alleged facts that show that McLean, Chaffin, and Taylor provided him with medical care and determined that it was not the right time to schedule him for a left hip replacement. Because he was given medical care by these Defendants, who are medical professionals, to state a claim under the Eighth Amendment, Plaintiff must allege facts that the treatment he received was so poor as to demonstrate a complete lack of medical judgment by these Defendants. Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance*, 97 F.3d at 992; *Snipes*

Case 2:20-cv-00599-JPS   Filed 03/31/21   Page 10 of 15   Document 16

*v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996). Thus, neither an incorrect diagnosis nor improper treatment resulting from negligence state an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). Plaintiff has failed to allege facts that show Defendants were deliberately indifferent in this case. Rather, Plaintiff merely disagrees with the course of treatment they prescribed. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). Therefore, Plaintiff fails to state an Eighth Amendment claim upon which relief can be granted.

### 3.3 Americans with Disabilities Act & Rehabilitation Act

Title II of the Americans with Disabilities Act "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability," and it applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132).

The analysis under the Rehabilitation Act, 29, U.S.C. § 794, is essentially the same, except that the RA includes an additional element, requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical"). To state a claim under the RA, a plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections ("DOC") denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 671–72 (citations omitted).

Plaintiff's ADA and/or RA claim must be dismissed for the following reasons. First, because Defendants are all individual employees of the Wisconsin Department of Corrections, they are not subject to suit under the ADA or RA. Neither Title II of the ADA nor Section 504 of the RA permit individual capacity suits. *Jaros*, 684 F.3d at 670 ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."); *Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014) ("Title II of the ADA does not provide for individual capacity suits against state officials.") (internal quotation marks and citations omitted); *Badillo v. Thorpe*, 158 F.App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA or RA."); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.").

Second, Plaintiff fails to state an ADA and/or RA claim because he was not denied "the benefits of the services, programs, or activities of a public entity" and the DOC did not "den[y] him access to a program or activity because of his disability." Plaintiff is claiming that he was denied

the benefit of obtaining hip surgery. But the decision to schedule Plaintiff's hip surgery was at the discretion of the medical professionals involved. "The ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) ("A claim for inadequate medical treatment is improper under the ADA."); *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006) (plaintiff "cannot challenge a medical treatment decision under the ADA") (citations omitted); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."). There is no other benefit that Plaintiff has alleged he was denied. Thus, because Plaintiff was not denied a benefit under the ADA or RA, he has failed to state a claim for a violation of either.

## 4.    MISCELLANEOUS MOTIONS

Plaintiff filed a motion for leave to proceed without prepaying the filing fee, (Docket #2), but later paid the full filing fee. Thus, that motion will be denied as moot. Additionally, Plaintiff's motion for an order directing Defendants to reply, (Docket #9), and motion for default judgment, (Docket #11), must be denied. As the Court had not yet screened Plaintiff's complaint, Defendants did not have any obligation to respond and default judgment would be improper. Finally, Plaintiff's motion to withdraw magistrate judge consent, (Docket #13), will be denied as moot. Defendants have yet to be served in this case, and therefore, this case remains before the assigned district judge.

## 5.    CONCLUSION

In sum, Plaintiff has failed to state a claim for deliberate indifference in violation of the Eighth Amendment. Further, Plaintiff has failed to state

an ADA or RA claim. Thus, Plaintiff's case will be dismissed with prejudice for failure to state a claim.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice** under 28 U.S.C. §1915A(b)(1) because the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that Plaintiff's motion directing Defendants to reply (Docket #9) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment (Docket #11) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw magistrate judge consent (Docket #13) be and the same is hereby **DENIED as moot**.

This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for

relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2021.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge